# United States Court of Appeals
## For the First Circuit

No. 04-1088

UNITED STATES,

Appellee,

v.

MITCHELL MCGUIRE, A/K/A MIX,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, Senior U.S. District Judge]

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

Sally A. Morris for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

November 17, 2004

**STAHL, <u>Senior Circuit Judge</u>**.  Appellant Mitchell McGuire ("McGuire"), convicted of conspiracy to possess with intent to distribute and possession of with intent to distribute cocaine base, now seeks review of the district court's decision to admit at his trial:  (1) evidence of two episodes during which he engaged in violent acts; and (2) a firearm found at the apartment in which he was arrested.  McGuire also appeals the district court's finding that he was a career offender for purposes of sentencing.  Finding no error, we affirm the district court's determinations.

## I.  Background

In the summer of 2001, McGuire met Susan Gray ("Gray") in Boston, Massachusetts.  Gray lived in an apartment at 64 Oxford Street in Lewiston, Maine.  Soon after they met, McGuire and Gray discussed the prospect of McGuire obtaining drugs in Boston for them to sell in Maine.

Shortly thereafter, McGuire and Gray began selling drugs obtained in Massachusetts in Maine, and by September 2002, McGuire had moved into Gray's Lewiston apartment.  The couple developed a significant number of regular customers, including Michael Cyr ("Cyr"), Brooke Bernier ("Bernier"), and Bernier's boyfriend, Chad Fitzhebert ("Fitzhebert").  They also employed drug runners, individuals who collected the money for and delivered the drugs they were selling.

One night in September 2002, McGuire drove to Bernier's apartment to deliver drugs. As McGuire exited his vehicle, Fitzhebert attempted, albeit unsuccessfully, to rob him.

At trial, Bernier testified that one evening during the month of October 2002, McGuire confronted her about the robbery attempt while she was leaving a friend's apartment building. She explained that as she was on her way out of the building, McGuire emerged from around a corner and forced her into an empty apartment. She stated that McGuire accused her of setting him up for the Fitzhebert robbery attempt. Then, she said, McGuire pulled out a handgun, aimed it at her head, and thereafter, hit her on the side of her head with the gun, causing her to lose consciousness.

Gray testified that after McGuire returned from his run-in with Bernier, he recited the details of the encounter to her. At trial, she was permitted to recount those details as McGuire had described them. Her testimony was entirely consistent with that of Bernier.

On December 29, 2002, Cyr visited Gray at the apartment she and McGuire shared. While he was inside the apartment, Cyr stole drugs that belonged to McGuire and Gray.

The next morning, McGuire went to Cyr's parents' home to find Cyr and retrieve the stolen drugs. At trial, Cyr's mother testified that when she awoke that morning, she saw a male intruder, wearing a mask, standing next to her bed. She stated

that the man, who was holding a gun, demanded to be taken to Cyr's room. After discovering that Cyr was not at home, she said that the unwanted visitor complained that Cyr had stolen from him, and then ordered her and her husband onto the floor and duct-taped their hands and feet. She testified that she "had a feeling" the intruder was McGuire, whom she had spoken with on the telephone and seen before. Gray also was allowed to testify that upon McGuire's return to 64 Oxford Street, he told her that he had gone to Cyr's parents' home with a gun and had scared and tied up Cyr's parents.

Later that day, after receiving a report that McGuire had broken into Cyr's parents' home, police officers went to 64 Oxford Street and arrested McGuire in the apartment he and Gray shared. In connection with the arrest, the officers searched the apartment and found, among other things, drugs, drug paraphernalia, McGuire's Maine driver's license which listed his address as 64 Oxford Street, a storage agreement in McGuire's name that gave 64 Oxford Street as his address, and a handgun. It was subsequently determined that McGuire's fingerprints were not on the gun and the gun was not the same gun that McGuire possessed when he invaded Cyr's parents' home.[1]

An indictment then issued charging McGuire and Gray with: (1) conspiracy to possess with intent to distribute more than five

---

[1]It is unclear whether the gun was the same gun McGuire used during his confrontation with Bernier.

-4-

grams of cocaine base from June 2002 to December 2002; and (2) possession of and intent to distribute cocaine base during the same time period. McGuire's trial began on July 28, 2003. Both prior to, and at the start of, trial, McGuire, citing Federal Rules of Evidence 402 ("Rule 402"), 403 ("Rule 403"), and 404(b) ("Rule 404(b)"), moved to exclude all evidence relating to (1) his October 2002 encounter with Bernier, (2) his December 2002 encounter with Cyr's parents, and (3) the handgun found in the apartment he and Gray shared. The district court refused to exclude the evidence. On July 30, 2003, a jury found McGuire guilty as charged.

At McGuire's sentencing hearing on December 29, 2003, the district court found him to be a career offender under section 4B1.1 of the United States Sentencing Guidelines. Taking that status into consideration, the court sentenced McGuire to a prison term of 360 months to be followed by a term of supervised release.

On appeal, McGuire argues that the district court should have excluded the abovementioned evidence. He claims that the evidence regarding Bernier and Cyr's parents was unduly prejudicial evidence of uncharged misconduct that should have been excluded under Rules 403 and 404(b). He also argues that the evidence of the firearm was irrelevant and unduly prejudicial and, as such, should have been excluded pursuant to Rules 402 and 403. Moreover, McGuire alleges that the district court's finding that he was a

career offender was improper in view of <u>Blakely</u> v. <u>Washington</u>, ___ U.S. ___, 124 S. Ct. 2531 (2004).

## II.  McGuire's Evidentiary Challenges

We review the district court's decision to admit the disputed evidence for abuse of discretion.  <u>See</u> <u>Richards</u> v. <u>Relentless, Inc.</u>, 341 F.3d 35, 49 (1st Cir. 2003) (noting that a district court's relevancy determinations are reviewed for abuse of discretion); <u>United States</u> v. <u>Balsam</u>, 203 F.3d 72, 84 (1st Cir. 2000) (stating that evidentiary rulings pursuant to Rules 403 and 404(b) are reviewed for abuse of discretion).

A.        <u>Evidence Concerning Bernier and Cyr's Parents</u>

McGuire argues that the evidence pertaining to Bernier and Cyr's parents was unduly prejudicial evidence of uncharged misconduct that should have been excluded pursuant to Rules 403 and 404(b).  Rule 403 provides for the exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."  And, Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

However, other bad acts evidence is admissible so long as the following, two-part test is satisfied:  First, in accordance with Rule 404(b), "the evidence must have special relevance to an issue in the case such as intent or knowledge, and must not include

bad character or propensity as a necessary link in the inferential chain." United States v. Varoudakis, 233 F.3d 113, 118 (1st Cir. 2000) (internal quotation marks and citation omitted); see Fed. R. Evid. 404(b). Second, consistent with Rule 403, the probative value of the evidence must not be "substantially outweighed by the danger of unfair prejudice." Varoudakis, 233 F.3d at 118; see Fed. R. Evid. 403. Evidence is unfairly prejudicial if it "invites the jury to render a verdict on an improper emotional basis." Varoudakis, 233 F.3d at 122 ("We are . . . cautious when the prior act is a shocking or heinous crime likely to inflame the jury.") (internal quotation marks and citation omitted).

Yet, because not all bad acts constitute other bad acts, not all evidence of bad acts must satisfy the two-part test to be admissible. Where a bad act is "direct proof of the crime charged," the evidence of the bad act need not satisfy Rule 404(b)'s special relevance requirement to be admissible, but in line with Rule 403, the probative value of the evidence still must not be substantially outweighed by the danger of unfair prejudice. United States v. Arboleda, 929 F.2d 858, 866 (1st Cir. 1991); see United States v. David, 940 F.2d 722, 737 (1st Cir. 1991) ("Evidence which is part and parcel of the crime being tried is simply not 'other crimes' evidence within the ambit of Rule 404(b).").

Contrary to McGuire's claim, the evidence that McGuire threatened and struck Bernier with a gun because he believed that she and her boyfriend had conspired to rob him was not Rule 404(b) evidence. Indeed, it constituted direct proof of the charged drug conspiracy. The episode occurred during the time frame charged in the indictment. In addition, Gray's testimony that McGuire gave her a detailed description of the episode indicated the existence of a conspiracy between her and McGuire. Moreover, the episode demonstrated McGuire's intent to protect the existing conspiracy from potential threats, particularly theft.

Similarly, the evidence that McGuire committed an armed invasion of Cyr's parents' home in response to Cyr's theft of drugs from McGuire and Gray was direct proof of the charged conspiracy. Like the encounter with Bernier, this episode: (1) occurred during the time frame charged in the indictment; (2) suggested the existence of a conspiratorial agreement between McGuire and Gray; and (3) demonstrated McGuire's intent to protect the conspiracy.[2]

---

[2]McGuire argues that Cyr's mother's testimony should have been excluded because she testified that she only "had a feeling" that McGuire was the intruder in her home. Yet, questions concerning Cyr's mother's ability to identify McGuire as the intruder were relevant to the weight the jury attached to her testimony rather than its admissibility. See Hallquist v. Local 276, Plumbers & Pipefitters Union, 843 F.2d 18, 24 (1st Cir. 1988) ("The extent of a witness' knowledge of matters about which he offers to testify goes to the weight rather than the admissibility of the testimony.") (internal quotation marks, emphasis, and citations omitted). In any event, McGuire's identity as the intruder was independently established by Gray's testimony.

Because we find that the evidence in issue constituted direct proof of the charged conspiracy, it is unnecessary for us to determine the admissibility of the evidence under Rule 404(b). See Arboleda, 929 F.2d at 865-66. Nevertheless, Rule 403 still requires consideration of whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The evidence was highly probative, as it was direct proof of the charged conspiracy. To be sure, the evidence could have had a prejudicial impact in that it may have caused the jury to view McGuire as a person prone to violence. But, Rule 403 does not prohibit the admission of prejudicial evidence; rather, it prohibits the admission of evidence that is "unfairly" prejudicial. And, taking into account the high probative value of the evidence, it cannot be said that the probative value of the evidence was substantially outweighed by a danger of unfair prejudice. The district court did not abuse its discretion in admitting the evidence.

B.    Evidence Concerning the Handgun

In his final evidentiary challenge, McGuire contends that the evidence regarding the handgun was irrelevant and unduly prejudicial, and as such, it should have been excluded pursuant to Rules 402[3] and 403. We disagree. The evidence was relevant

_____

[3]Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by[, among other things,] . . . [the Federal Rules of Evidence] . . . ." It also states that

-9-

because "in drug trafficking firearms have become 'tools of the trade' and thus are probative of the existence of a drug conspiracy."[4]  United States v. Green, 887 F.2d 25, 27 (1st Cir. 1989).  And, it cannot be said that the probative value of the firearm as a "tool of the trade" was substantially outweighed by the danger of unfair prejudice.  Any prejudice that may have occurred as a result of the admission of the gun was not unfair because there is no reason to suspect that its admission caused the jury to decide the case on an improper emotional basis.  See Varoudakis, 233 F.3d at 122.  The district court did not abuse its discretion in deciding to admit the firearm.[5]

---

"[e]vidence which is not relevant is not admissible."  Evidence is relevant if it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

[4]McGuire asserts that the "tools of the trade" doctrine is inapplicable to this case because "no firearms offenses were charged in this case and [the case] did not involve a large-scale drug conspiracy."  Yet, the fact that no firearms offenses were charged in this case is irrelevant, as the firearm was nevertheless probative of the existence of a drug conspiracy.  And, it is unnecessary for us to address whether an extensive drug conspiracy is a prerequisite to the applicability of the "tools of the trade" doctrine, because here we have a significant conspiracy, complete with two drug dealers, a considerable number of regular drug customers, several drug runners, and the deliberate transportation of drugs across state lines from Massachusetts to Maine.

[5]McGuire argues that because his fingerprints were not found on the gun, the gun was insufficiently connected to him.  But, the gun was found in the apartment McGuire and Gray shared (McGuire listed the apartment as his address on both his driver's license and a storage agreement), and McGuire had used guns at various times in connection with the drug conspiracy.  To be sure, the gun

### III.  McGuire's Sentencing Challenge

McGuire, citing <u>Blakely</u> v. <u>Washington</u>, ___ U.S. ___, 124 S. Ct. 2531 (2004), argues that the district court's finding that he was a career offender under section 4B1.1 of the United States Sentencing Guidelines violated his right to have every fact essential to his punishment determined by a jury.  Because McGuire did not raise this argument before the district court, we review the finding for plain error.  <u>United States</u> v. <u>Morgan</u>, 384 F.3d 1, 8 (1st Cir. 2004).  To establish plain error, McGuire must demonstrate "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  <u>United States</u> v. <u>Duarte</u>, 246 F.3d 56, 60 (1st Cir. 2001).  We conclude that McGuire has failed to carry his burden.

Section 4B1.1 of the United States Sentencing Guidelines provides that a defendant is a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of

---

in question was not the same gun McGuire brandished at the Cyr home, and it may not have been the same gun he used during his confrontation with Bernier.  Nevertheless, for the reasons stated above, the gun was sufficiently connected to him.

either a crime of violence or a controlled
substance offense.

McGuire contends that he was entitled to a jury determination that he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Yet, under existing pre-<u>Blakely</u> First Circuit precedent, "[w]hether a prior conviction qualifies as a predicate offense under [section] 4B1.1 is a question of law . . . ." <u>United States</u> v. <u>Santos</u>, 363 F.3d 19, 22 (1st Cir. 2004). The trial judge acted in accordance with Circuit precedent in finding that McGuire had at least two qualifying felony convictions, and thus, we cannot say that plain error occurred. See <u>Morgan</u>, 384 F.3d at 8.

**<u>Affirmed.</u>**