# United States Court of Appeals
## For the First Circuit

No. 04-1064

PAUL DIRICO,

Plaintiff, Appellant,

v.

CITY OF QUINCY and JAMES MCNEIL,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Scott A. Lathrop, with whom Scott A. Lathrop & Associates was
on brief, for appellant.
Richard C. Bardi for defendant-appellee McNeil.
Monica E. Conyngham, with whom Joseph A. MacRitchie was on
brief, for defendant-appellee City of Quincy.

April 5, 2005

**STAHL**, **Senior Circuit Judge**.  In 1999, Paul DiRico ("DiRico") was arrested by James McNeil ("McNeil"), a police officer and employee of the City of Quincy (the "City").  DiRico was injured during the arrest and maintains that his injuries were the result of the use of excessive force on the part of McNeil.  In 2000, DiRico sued McNeil and the City in the United States District Court for the District of Massachusetts, asserting various claims arising out of the arrest.  At trial, the district court granted McNeil's motion to exclude all evidence pertaining to an arrest that had occurred several weeks prior to the one in question. (McNeil had been accused of using excessive force in connection with that prior arrest.)  In addition, the district court allowed the City's motion for judgment as a matter of law.  The jury then returned a verdict for McNeil.  DiRico now seeks review of the district court's decision to allow the two motions.  We affirm.

## I.  Background

Early in the morning of May 12, 1999, DiRico was driving to his parents' house in Quincy, Massachusetts.  At approximately 1:00 a.m., DiRico arrived at the house, parked his car in his parents' driveway, and exited his vehicle.  He then noticed that a police cruiser had pulled into the driveway and parked behind him.[1] McNeil got out of the cruiser and approached DiRico.

---

[1]DiRico acknowledges that before he turned onto the street on which his parents live, he failed to stop at a stop sign.

The parties disagree as to what happened next. DiRico claims that he said, "private property," and McNeil responded, "I don't care. . . . I want your license and registration." DiRico says that after he complied, McNeil ordered him to "[g]et back in the car," and as DiRico turned towards the car, McNeil "pushed [him] to the ground face first" and drove his face "into the pavement." DiRico asserts that McNeil then "picked [him] up . . . and started banging [his] head against the cruiser."

McNeil, however, claims that, when he exited his cruiser, he asked DiRico for his license and registration several times, and each time, DiRico responded, "Get the [expletive] off [of] private property." McNeil asserts that he noticed that DiRico was "unsteady on his feet," "his [speech] was a bit slurred," and he smelled like alcohol. According to McNeil, DiRico then "made a gesture to go inside his vehicle." McNeil "told him [to] stop," because he had seen hockey sticks in the car and had "lost sight of [DiRico's] hands," but DiRico did not comply. In response, McNeil tried to grab hold of DiRico to handcuff him, but DiRico resisted and fell to the ground. McNeil testified that he was able to handcuff DiRico only after an "intense" struggle.

The parties agree that DiRico was then placed in the cruiser. At that point, DiRico noticed the presence of another officer, Michael J. O'Brien ("O'Brien"). DiRico told O'Brien that he had been beaten by McNeil. Soon thereafter, DiRico was taken to

a nearby hospital.  After receiving treatment, he was transported to the Quincy Police Station and booked.  DiRico told the officer at the booking desk, Kevin O. Williams ("Williams"), that he had been beaten by McNeil.

The City has a written policy regarding the use of force by police officers.  McNeil was aware of the policy and understood that "the use of force was permissible only to overcome resistance" and that "force [was to be used] only in the least amount necessary."  McNeil had not only read the policy, which was regularly distributed to the officers of the Quincy Police Department, but, when he first joined the Department, he received ten weeks of training, a portion of which was spent reviewing the policy.

On November 20, 2000, DiRico sued McNeil and the City to recover for injuries he sustained during his encounter with McNeil.[2]  DiRico alleged that they were both liable for (1) violation of 42 U.S.C. § 1983,[3] (2) violation of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H, 11I, (3) assault

---

[2]DiRico also sued O'Brien and Williams, but his claims against them were later dismissed or withdrawn and are not implicated in this appeal.

[3]Section 1983 establishes a right of action against "person[s] who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory," violate the civil rights of "any citizen of the United States or other person within the jurisdiction thereof."  Cases brought under this statute often involve the use of excessive force by police officers. See, e.g., Bordanaro v. McLeod, 871 F.2d 1151, 1153 (1st Cir. 1989).

and battery, (4) false imprisonment, (5) intentional infliction of emotional distress, (6) malicious prosecution,[4] and (7) negligence. McNeil and the City subsequently moved for summary judgment. The district court granted McNeil summary judgment on the negligence claim and the City judgment on all claims except for the § 1983 and negligence claims.

Trial on the remaining claims began on November 17, 2003. Prior to trial, McNeil moved, pursuant to Federal Rule of Evidence 404(b), to exclude all evidence pertaining to his March 21, 1999 traffic stop and arrest of Andrew J. Burke ("Burke"). The Burke evidence included a letter from Quincy Police Department Officer Barbara Di Natale to Officer Normand Goyette ("Goyette"), stating that Burke had arrived at the police station with a bruised eye and broken arm; claimed that his injuries were caused by McNeil; and complained that nobody would help him file a report against McNeil. The evidence also included a letter from Goyette to Burke, dated March 22, 1999, in which Goyette acknowledged Burke's claims and asked Burke to fill out the complaint form that he was sending with

---

[4]Following DiRico's arrest, criminal charges were filed against him for, among other things, operating an automobile under the influence, failing to stop for a stop sign, failing to stop for a police officer, and assault and battery on a police officer. DiRico was convicted of operating under the influence, failing to stop for a stop sign, and failing to stop for a police officer; he was acquitted of all other charges. The malicious prosecution claims stem from this criminal action.

the letter.[5]  The letter and form, which were sent the next day to the address Burke had provided upon his arrest, were ultimately returned to the Department, as Burke no longer lived at that address.[6]  The Rule 404(b) motion to exclude, which DiRico did not oppose, was granted on November 20, 2003.

That same day, the City filed a motion for judgement as a matter of law on all counts against it, which the district court allowed.  In deciding the City's motion, the district court did consider the Burke evidence.[7]

On November 25, 2003, a mistrial was declared as to McNeil because the jury could not agree on a verdict.  The case against McNeil was retried the next week.  The evidentiary rulings from the first trial were applied on retrial.  On December 5, 2003, the jury returned a verdict in favor of McNeil on all counts.

On appeal, DiRico claims that the district court erred in granting McNeil's Rule 404(b) motion to exclude and the City's

---

[5]In addition, the evidence included McNeil's written narrative of the Burke arrest, in which he stated that he "wrestled [Burke] to the ground" after Burke had opened, and refused to step away from, the trunk of his car.

[6]Burke did not subsequently pursue his claim against McNeil.

[7]At no time did DiRico object to this limited use of the Burke evidence.  Indeed, he said nothing when the district court stated, "I don't think [DiRico] wants [the evidence to be admitted] substantively [against McNeil].  He simply wants [the evidence to show] what was told to [the City]."

motion for judgment as a matter of law.  We address these arguments in turn.

## II.  Rule 404(b) Motion to Exclude

DiRico first challenges the district court's decision, pursuant to Rule 404(b), to exclude from his case against McNeil the Burke evidence.  Generally, we review the exclusion of evidence under Rule 404(b) for abuse of discretion.  See United States v. Decicco, 370 F.3d 206, 210 (1st Cir. 2004).  However, if there was no objection to the exclusion at trial, our review is only for plain error.  See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).  We will not find plain error unless "(1) [] an error occurred (2) which was clear or obvious and which not only (3) affected [DiRico's] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  Id.  Because DiRico did not assert his evidentiary challenge below, our review is for plain error.[8]

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  But, such

---

[8]DiRico argues that we should apply a more exacting standard of review, but he has not provided us with any relevant support for his argument.  Therefore, we deem the argument waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[W]e see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

evidence is admissible so long as the following, two part test is satisfied:  First, in accordance with Rule 404(b), "the evidence must have special relevance[9] to an issue in the case such as intent[,] knowledge, [or absence of mistake or accident,] and must not include bad character or propensity as a necessary link in the inferential chain."  United States v. Varoudakis, 233 F.3d 113, 118 (1st Cir. 2000) (internal quotation marks omitted).  Second, consistent with Federal Rule of Evidence 403, the probative value of the evidence must not be "substantially outweighed by the danger of unfair prejudice."  Id.  Evidence is unfairly prejudicial if it "invites the jury to render a verdict on an improper emotional basis."  Id. at 122.

The district court did not plainly err in deciding to exclude the Burke evidence.  We do not see how the evidence had special relevance to an issue in the case.[10]  And, even if it did, we cannot say that a finding that the danger of unfair prejudice

---

[9]Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

[10]DiRico contends that the evidence was specially relevant because it called into question McNeil's claim that DiRico's injuries were caused by a mistake or accident.  However, McNeil never claimed that DiRico's injuries were caused by a mistake or accident; rather, McNeil insisted that the injuries were the result of DiRico's own aggressive behavior in resisting arrest. Moreover, as a general matter, the absence of mistake or accident exception to Rule 404(b) does not apply unless the opposing party first raises a claim of mistake or accident.  See, e.g., United States v. Rodriguez-Cardona, 924 F.2d 1148, 1151 (1st Cir. 1991).

-8-

substantially outweighed its probative value constituted plain error.  See United States v. Sabetta, 373 F.3d 75, 82-83 (1st Cir. 2004) ("only rarely--and in extraordinarily compelling circumstances--will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." (internal quotation marks omitted)).  Here, the evidence could not have had much probative value given that it related to a single, unsubstantiated claim of use of excessive force.  And, if the jury had been permitted to consider the evidence, there was certainly a danger that it would have viewed McNeil as prone to engaging in violent behavior and rendered a verdict on that improper basis. The decision to exclude the evidence is affirmed.[11]

### III.  Motion for Judgment as a Matter of Law

DiRico next challenges the district court's decision to grant the City's motion for judgment as a matter of law.  In granting the motion, the district court necessarily determined that there was "no legally sufficient evidentiary basis for a reasonable jury to find for [DiRico] on [his § 1983 or negligence claims]." Fed. R. Civ. P. 50(a)(1).  We review the grant of judgment as a matter of law de novo.  See Guilloty Perez v. Pierluisi, 339 F.3d 43, 50 (1st Cir. 2003).  In conducting our review, "we examine the

---

[11]We note that the letters from Di Natale and Goyette contained hearsay evidence and were subject to exclusion from the case against McNeil on that ground alone.

evidence . . . in the light most favorable to [DiRico]."  Id.
(internal quotation marks omitted).

A.      Section 1983

DiRico argues that the district court erred in dismissing
his § 1983 claim because the evidence created a triable issue as to
whether the City was liable under that statute for failing to
train, supervise, and discipline McNeil with regard to the use of
force.  A municipality can be liable under § 1983 for failing to do
any of the above if that failure causes a constitutional violation
or injury and "amounts to deliberate indifference to the rights of
persons with whom the [officers] come into contact."  City of
Canton v. Harris, 489 U.S. 378, 388 (1989); Bordanaro v. McLeod,
871 F.2d 1151, 1159 (1st Cir. 1989).[12]

We affirm the dismissal of the § 1983 claim for two,
independent reasons.  First, the evidence was not sufficient to
support DiRico's argument that the City exhibited deliberate
indifference in training, supervising, or disciplining McNeil with
respect to the use of force.  Even assuming that the evidence
suggested that the City's training, supervision, or discipline of

_____

[12]A municipality may be sued under § 1983 only when the
execution of a municipal policy or custom is the cause of the
relevant injury. Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002).
And, "[o]nly where a municipality's failure to train[, supervise,
or discipline] its employees in a relevant respect evidences a
'deliberate indifference' to the rights of its inhabitants can such
a shortcoming be properly thought of as a city 'policy or custom'
that is actionable under § 1983." City of Canton, 489 U.S. at 389.

-10-

McNeil was wanting, it did not indicate that the City was deliberately indifferent to the rights of its citizens. As to training, the evidence established that the City regularly gave McNeil copies of its policy on the use of force[13] and provided him with formal instruction on the matter.[14] See Santiago v. Fenton, 891 F.2d 373, 382 (1st Cir. 1989) ("Provision of only four hours of training, without more, does not amount to [deliberate indifference]."). And, although the City decided not to increase its supervision over or discipline McNeil after the Burke claim, the evidence does not indicate that its decision reflected deliberate indifference. The city simply opted not to take action against McNeil after receiving a single, unsubstantiated allegation of use of excessive force.[15] Cf. Bordanaro, 871 F.2d at 1159-61 (finding the evidence "sufficient to prove that [city] officials were deliberately indifferent to the need for better . . . training, supervision and discipline of the city's police force").

_____

[13]DiRico has not argued that the policy itself was somehow deficient.

[14]Although McNeil testified that he "could not point to any particular training" that he received "on the topic of handling [himself] . . . during stressful moments," that testimony was not sufficient to create a triable issue as to whether the City was deliberately indifferent given the extensive training on the use of force that McNeil testified to receiving.

[15]DiRico represented in his brief to this court that "there was testimony that suggested that the City . . . routinely ignored complaints about the use of excessive force" (emphasis added). However, the record does not support that representation.

-11-

Second, because a jury determined that McNeil did not violate DiRico's constitutional rights (and we see no reason to upset that determination), the § 1983 claim against the City necessarily fails, as it cannot be said that any action on the part of the City caused DiRico's injuries.  See Evans v. Avery, 100 F.3d 1033, 1040 (1st Cir. 1996) (holding that a municipality cannot be held liable under § 1983 for failure to train absent an underlying constitutional violation by one of its officers).

B.      Negligence

We next consider whether the district court erred in dismissing DiRico's negligence claim against the City.  DiRico, relying on the Burke evidence, insists that because "the City . . . had, or should have had, knowledge of . . . McNeil's assaultive behavior and did nothing to curb that behavior," there was a triable issue as to whether it was negligent.  But, even if we assume that McNeil's actions towards DiRico were in some way inappropriate,[16] we do not think that the evidence was sufficient to support the negligence claim against the City.  The evidence indicated that a single individual complained that McNeil used excessive force during an arrest and that an immediate attempt was made to document the claim, which was unsuccessful because the

---

[16]It is not clear from the record that the district court's dismissal of the negligence claim against McNeil at the summary judgment stage represented an adjudication on the merits that McNeil was not negligent.

-12-

complaining party had provided a false address upon his arrest and made no further attempt to pursue his claim.  On this evidence, we cannot say that the City was negligent in deciding not to take action against McNeil.  The dismissal of the negligence claim is affirmed.[17]

**Affirmed.**

---

[17]Although the record indicates that the dismissal of DiRico's negligence claim against the City may have been inadvertent, we may uphold the dismissal on any ground supported by the record.  See Wilson v. Town of Mendon, 294 F.3d 1, 10 n.23 (1st Cir. 2002).