# United States Court of Appeals
## For the First Circuit

No. 13-1527

UNITED STATES OF AMERICA,

Appellee,

v.

FRANCISCO RODRÍGUEZ-SOLER, a/k/a FRANKIE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Thompson, Kayatta, and Barron,
Circuit Judges.

Jane Elizabeth Lee, for appellant.
John A. Mathews II, Assistant United States Attorney, with
whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and
Nelson Pérez-Sosa, Assistant United States Attorney, Chief,
Appellate Division, were on brief, for appellee.

December 3, 2014

**THOMPSON, <u>Circuit Judge</u>.**

**OVERVIEW**

Francisco Rodríguez-Soler wants us to undo his conviction for various drug and firearm charges.  His appeal rises or falls depending on whether the district judge slipped by admitting pictures showing him with accused coconspirators and by allowing police officers to testify about the pics.  His appeal falls, for reasons revealed below.  And so when all is said and done, we affirm.

**READER ALERT**

If our defendant were questioning the sufficiency of the evidence against him, we would of course narrate the facts in the light most flattering to the government.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Tum</u>, 707 F.3d 68, 69 (1st Cir. 2013).  But for cases like his — ones with no sufficiency challenge, just plenty of evidentiary issues — there is surprisingly no clear consensus on the subject.  Some opinions say that we can still retell the facts in the light most favorable to the government.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Bunchan</u>, 580 F.3d 66, 67, 71 (1st Cir. 2009); <u>United States</u> v. <u>Benedetti</u>, 433 F.3d 111, 113, 116-18 (1st Cir. 2005); <u>United States</u> v. <u>Mercado</u>, 412 F.3d 243, 245, 248-50 (1st Cir. 2005).  Others say that we ought to present the facts in a balanced way, without favoring either side.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Felton</u>, 417 F.3d 97, 99, 100-02 (1st Cir. 2005); <u>United States</u> v. <u>Bartelho</u>, 129 F.3d

663, 667 n.1, 676-78 (1st Cir. 1997); <u>United States</u> v. <u>Procopio</u>, 88 F.3d 21, 23-24, 29-30 (1st Cir. 1996). As best we can tell, we are the first panel to note this split. But whatever the exact contours of our review, none of it matters here — for even using the balanced-presentation approach (which is surely the better of the two from a defendant's perspective), Rodríguez-Soler's appeal still falters.

**HOW THE CASE GOT HERE**

A federal grand jury indicted Rodríguez-Soler for conspiring to possess illegal drugs with intent to distribute within 1,000 feet of a protected area,[1] conspiring to possess a firearm during and in relation to a drug-trafficking crime,[2] and possessing (or aiding and abetting the possession of) a firearm in furtherance of a drug-trafficking crime.[3] The government's theory of guilt at trial was straightforward: Rodríguez-Soler served as the right-hand man to Christian A. Figueroa-Alvardo, also known as "Tatón" (which is what we will call him), who ran a drug point at a public-housing complex. And the government offered much evidence in the hopes of proving its case.

For example, some accused conspirators — having flipped after getting caught — testified about how Rodríguez-Soler was "one

---

[1] <u>See</u> 21 U.S.C. §§ 841(a)(1), 846, and 860.

[2] <u>See</u> 18 U.S.C. §§ 924(c)(1)(A) and 924(o).

[3] <u>See</u> 18 U.S.C. §§ 921(a)(3), 924(c)(1)(A), and 2.

-3-

of the bosses" at the drug point, supervising the conspiracy's underlings and handling problems whenever the need arose, procuring and preparing drugs for sale, carrying and using guns to protect the conspiracy's turf, etc. And a number of police officers testified about their investigation of the case, like how they had set up video equipment in empty apartments to record what was going on at the drug point and how they had given informants hidden cameras to capture drug buys. One officer also explained how he had found Rodríguez-Soler's cell phone at an area in the complex where drug deals went down. The phone had a photo of Rodríguez-Soler holding what appeared to be a rifle.

On top of that, the jury had before it two key categories of exhibits (admitted through the officers' testimony). The first involved surveillance videos, one of which showed Rodríguez-Soler getting out of his car near the drug point and talking to conspirators. The second involved two sets of photos.

Set one showed Rodríguez-Soler with conspiracy members outside a police station following Tatón's arrest on an unrelated horse-theft charge. For simplicity we will call these pics the "police-station photos." Rodríguez-Soler's lawyer did not object when the judge admitted them, though he did object — unsuccessfully — on relevance and prejudice grounds after an officer ID'd a few persons in the pics and was about to say what he had seen one of

them "doing" at the housing project before.[4]  That officer later testified without objection that those appearing with Rodríguez-Soler in the police-station photos were under investigation for "the criminality" occurring at the drug point.  Later still another officer testified without objection that Rodríguez-Soler went to the station with "other persons" who "are also members" of Tatón's "organization" to find out what had happened.  And then a third officer testified without objection that those who ended up outside the station were not under arrest but had gone there to support

_____

[4] Here is what defense counsel, the prosecutor, and the judge had to say about this:

> [DEFENSE COUNSEL]:  Judge, I am going to object to this line of questioning on relevancy.  First of all, this picture has not been established to be in any way connected with any kind of illegal activity relating to this defendant.
>
> Now we are going to talk about someone in the picture who may have been doing other things and in a derivative sense it is going to prejudice us.  I don't know where this is going.
>
> [PROSECUTOR]:  Your Honor, th[is] is a case of conspiracy.  And part of the evidence to prove conspiracy is the fact that members of the conspiracy knew each other.
>
> [DEFENSE COUNSEL]:  Judge, the only problem is this picture has not been tied to this conspiracy.  Whatever happened that day has nothing to do with this conspiracy.
>
> THE COURT:  Here it is, this is the first evidence that it comes in.  I don't think you can establish a conspiracy with a first breath of the first witness or with the first photograph.  But we have to have a starting point.  So overruled.

Tatón, "who was this group's leader." "I took a photograph of them," the officer said, "and that was the first time that I had seen him" — meaning Rodríguez-Soler.

The second set of pics showed Rodríguez-Soler with conspiracy members after being pulled over for an unrelated traffic violation near the drug point. Our defendant was the car's driver. For clarity we will call these pics the "traffic-stop photos." Rodríguez-Soler's lawyer voiced no objection when the judge admitted these photos into evidence or when the officer testified about them.

Undaunted, Rodríguez-Soler tried hard to poke holes in the government's case. His lawyer, for starters, vigorously cross-examined the cooperating witnesses about their motives for testifying, touching on the agreements they had negotiated with prosecutors and exploring their lives of crime. His attorney also got the officers to admit to various things, including that one cannot tell by looking at the cell-phone photo whether the rifle was real or fake, that not everyone appearing in the surveillance videos was a drug dealer, and that nothing shows the police found drugs during the traffic stop. Rodríguez-Soler's witnesses described him as a respectful, hardworking university student who did not sell drugs and was always trying to improve himself. Even Rodríguez-Soler took the stand, testifying that he lived at the housing complex in a building near the drug point, that he had

parking near the drug point, that he owned no guns, that he had known Tatón and other alleged conspirators for years but had no clue that they were drug dealers, that the police found no drugs during the traffic stop, and that he had nothing to do with the drug point.

The jury found Rodríguez-Soler guilty on all counts. And the judge sentenced him to concurrent 188-month prison terms on counts 1 and 2, and a consecutive 60-month prison term on count 3.

Rodríguez-Soler appeals his conviction, criticizing the judge for admitting both sets of photos and the related testimony about his being with conspiracy members. All this evidence, he says, is of a guilt-by-association character, suggesting that he was a conspirator simply because he palled around with conspirators. In a slight variation on this theme, he also contends the evidence primed the jury to think that he was a "bad" man because he hung out with horse thieves and was a traffic violator — illegal doings (horse thievery and traffic infractions) unrelated to the crimes that landed him in prison. And he complains that the officers essentially told the jury that they had snapped his photo as part of an investigation into the conspiracy — which, his argument continues, conveyed to the jury that they thought he was a conspiracy member too. So, reaching a crescendo, he claims the evidence is irrelevant, prejudicial, and constitutes

forbidden other-acts evidence.  See Fed. R. Evid. 401, 403, and 404.  We think he is wrong, for reasons we now explain.

**OUR ANALYSIS**

(A)
The Standards of Review

Figuring out the applicable standards of review here is tricky.  Take the relevance and prejudice issues.  The parties — who agree on little else — both think Rodríguez-Soler protested enough below to argue on appeal about the relevance and prejudice of the police-station evidence (the photos and the testimony concerning his being with conspirators).  If true, that would trigger abuse-of-discretion review — a famously-deferential standard that requires a challenger to show that no rational person could accept the judge's decision.  See, e.g., United States v. Maldonado, 708 F.3d 38, 42 (1st Cir. 2013); United States v. Polanco, 634 F.3d 39, 44-45 (1st Cir. 2011).  One could quibble with their shared view — after all, even Rodríguez-Soler concedes his counsel "did not initially object to the introduction" of the police-station photos; plus he says more here about relevance and prejudice than he did below.  But we will give him the benefit of the doubt on this point.  Cf. Polanco, 634 F.3d at 44 (commenting that "[w]e need not wrestle" with the question of whether the defendant "did enough to preserve" an issue because he still loses using the pined-for abuse-of-discretion standard).  Still, he raised no relevance or prejudice objection below regarding the

-8-

traffic-stop evidence (the photos and the testimony about his being with conspirators). So we review this matter only for plain error — an oh-so demanding standard, requiring him to show "error, plainness, prejudice to [him] and the threat of a miscarriage of justice." See United States v. Jones, 748 F.3d 64, 69 (1st Cir. 2014) (alteration in original) (quoting United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011)).

As for the other-acts issue, Rodríguez-Soler never objected to the police-station or the traffic-stop evidence on this basis. And that means he must also run the gauntlet of plain-error review to get anywhere with this argument.

Now on to Rodríguez-Soler's claims.

(B)
The Rule 401 Issue

Up first is the relevance issue. As Rodríguez-Soler tells it, the police-station and traffic-stop evidence had nothing to do with the charged conspiracy. Ergo, he says, the evidence was irrelevant.

The problem for Rodríguez-Soler is that federal rules of evidence set a very low bar for relevance. See, e.g., United States v. Cotto-Aponte, 30 F.3d 4, 6 (1st Cir. 1994). Rule 401 says (emphasis ours) that if the evidence has "any tendency" to make a material fact more or less likely, it is relevant. See Bielunas v. F/V Misty Dawn, Inc., 621 F.3d 72, 76 (1st Cir. 2010) (noting how "[t]he definition of relevance is quite expansive,"

which helps explain why "[a] relevancy-based argument is usually a tough sell"). And the evidence here clears this modest bar with ease, because it tends to show (at least to some degree) that Rodríguez-Soler knew some of the conspirators while the conspiracy was raging. Actually, it tends to show that he knew some of them fairly well — well enough to (a) go with members to the station to help the conspiracy's leader, who was there on an unrelated horse-theft charge; and (b) drive members around before being stopped by the police for an unrelated traffic infraction.

Now a conspiracy member need not know all his fellow coconspirators. See, e.g., United States v. Rivera Calderón, 578 F.3d 78, 91 (1st Cir. 2009). But evidence tying one alleged member to another or others certainly is relevant. See United States v. Anello, 765 F.2d 253, 261 (1st Cir. 1985) (Breyer, J.) (explaining that hand-written telephone messages between alleged conspirators were relevant because they tended to prove that some of them knew each other). And it matters not whether the evidence conclusively ties Rodríguez-Soler to the charged crime. See, e.g., Rivera Calderón, 578 F.3d at 97. "[M]ost convictions result from the cumulation of bits of proof which, taken singly, would not be enough in the mind of a fair minded person." United States v. Pugliese, 153 F.2d 497, 500 (2d Cir. 1945) (L. Hand, J.). When it comes to relevancy, then, what matters "is that each bit may have enough rational connection with the issue to be considered a factor

-10-

contributing to an answer."  Id.; see also Rivera Calderón, 578 F.3d at 97.  And again, the fought-over evidence fits the bill.

Let us be perfectly clear.  Merely hanging out with criminals hardly suffices to prove participation in a conspiracy. See, e.g., Polanco, 634 F.3d at 45; United States v. Benavente Gomez, 921 F.2d 378, 381 (1st Cir. 1990).  And nothing we say today is intended to suggest anything to the contrary.  But our focus, once again, is on relevancy, not sufficiency.  And because the groused-about evidence moves the knowledge inquiry forward to some degree, it is relevant — even though standing alone it is not enough to convict him.

The bottom line is this.  The relevancy requirement is not very hard to meet.  See, e.g., Polanco, 634 F.3d at 44.  And it is met here.  So we reject Rodríguez-Soler's claim that the judge abused his wide discretion in ruling the police-station evidence relevant.  And using the plain-error regime — a standard that is not defendant-friendly, see, e.g., United States v. Williams, 717 F.3d 35, 42 (1st Cir. 2013) — we also reject his claim that the judge should have deemed the traffic-stop evidence not relevant. Cf. generally Torres-Rivera v. O'Neill-Cancel, 406 F.3d 43, 53 (1st Cir. 2005) (finding that a judge's action "was not abuse of discretion and, thus, was not plain error").  Enough said on that.

## The Rule 403 Issue

Of course even relevant evidence can be excluded if its probative value is "substantially" overbalanced by other things, like the danger of "unfair prejudice." That is what Rule 403 says. Seizing on this rule, Rodríguez-Soler complains that the contested evidence prejudiced him by inviting the jury to convict because of guilt by association (suggesting conspirators flock together), because he was a "bad" person (showing he cavorted with horse rustlers and was a traffic offender), and because the officers said they took his pics as they zeroed in on the drug-trafficking conspiracy (implying he was in on the conspiracy too). These are not easy arguments to win on. For one thing, he faces difficult standards of review — abuse of discretion on some issues, plain error on others. For another — as we have said time and again — only in the rarest and most compelling cases "will we, from the vista of a cold appellate record," reject a judge's on-the-scene Rule 403 ruling. See DiRico v. City of Quincy, 404 F.3d 464, 468 (1st Cir. 2005) (parenthetically quoting United States v. Sabetta, 373 F.3d 75, 82-83 (1st Cir. 2004)).

(1)
## Probative Worth

The same qualities that make the disputed evidence relevant give it a probative value too. As we just said — though we say it again, because the point cannot be emphasized enough —

"innocent association with those involved in illegal activities can never form the sole basis for a conviction." United States v. Ortiz, 966 F.2d 707, 713 (1st Cir. 1992). But — and it is a very big "but" — "the existence of a close relationship between a defendant and others involved in criminal activity can, as a part of a larger package of proof, assist in supporting an inference of involvement in illicit activity." Id. And the contested evidence falls squarely within the latter category — i.e., the photos and accompanying testimony suggest an "intimacy of association" that is "a factor which, with others, [can] rather quickly add up to circumstantial proof" of criminality. See id. at 714 (parenthetically quoting United States v. Francomano, 554 F.2d 483, 487 (1st Cir. 1977)).

Hoping to downplay the evidence's probative worth, Rodríguez-Soler tries to distinguish Ortiz away. The evidence there, unlike here, involved the "defendant's association with other conspirators or accomplices occurring at or near the scene of the crime." Or so he argues. But his effort fails.

Ortiz involved a defendant named Nunez who drove with a drug dealer to a drug deal involving a customer who was really an undercover DEA agent. See 966 F.2d at 710-11. Things hit a snag, because the dealer had packaged too much cocaine — a kilo rather than the agreed-on half a kilo. Id. No worries, the dealer said. He would go back to his house with Nunez and repackage the product.

-13-

Id. at 711.  Nunez chimed in, seconding the dealer's plan.  Id.
The dealer later met up with the agent, this time with Nunez's
brother-in-law, defendant Ortiz, in tow and with a half a kilo bag
of cocaine in plain view.  Id. at 711, 714.  Ortiz did not say a
word as the deal went down.  Id. at 713.

Affirming Ortiz's conviction for aiding and abetting a
drug-trafficking scheme, we thought it significant that he and
Nunez were brothers-in-law.  Id. at 713.  Then came the money quote
referenced above:

> While innocent association with those involved
> in illegal activities can never form the sole
> basis for a conviction, the existence of a
> close relationship between a defendant and
> others involved in criminal activity can, as a
> part of a larger package of proof, assist in
> supporting an inference of involvement in
> illicit activity.

Id. (citations omitted).  Rodríguez-Soler reads this passage as
applying only to Ortiz and the dealer's ties — ties, he notes, that
put them together at the crime scene.  But even a quick skim of
Ortiz confirms that this passage deals with Ortiz and Nunez's ties
— brothers-in-law who were never together at the crime scene.
Given this reality, Rodríguez-Soler's bid to minimize Ortiz's
effect on the probative-value question — by hinting that the case's
reach is limited to association evidence tied to the criminals'
presence "at or near" the crime scene — goes nowhere.

If more were needed — and we doubt that it is — United
States v. Vega Molina, 407 F.3d 511 (1st Cir. 2005), also throws

-14-

cold water on his effort to discount the evidence's probative worth. There a quartet of criminals got arrested for running a kidnapping-for-ransom scheme in Puerto Rico that resulted in the kidnappee's death. Id. at 516-17. At trial one defendant challenged the admission of photos of him with other codefendants. Id. at 530. The pics were of them at a Connecticut hotel about a month after the crimes occurred, not of them at or near the Puerto Rico crime scenes, and not of them doing any acts related to the crimes of conviction (nothing in the opinion suggests otherwise). See id. Yet we did not back away from Ortiz. Instead we doubled down, saying, "[w]e have held before, and today reaffirm, that 'the existence of a close relationship between a defendant and others involved in criminal activity can, as part of a larger package of proof, assist in supporting an inference of involvement in illicit activity.'" Id. (quoting Ortiz, 966 F.2d at 713). And we okayed the photos' admission because they showed "that the appellants had an intimate relationship with one another." Id. Again, that devastates Rodríguez-Soler's attempt to recast Ortiz as requiring evidence of a "defendant's association" with others "at or near" the crime scene.

(2)
Unfair Prejudice

As for prejudice, we do not deny that the contested evidence of his hanging with conspirators is prejudicial. But almost all evidence is meant to be prejudicial (by helping one side

-15-

and hurting the other) — why else would a party present it?  See, e.g., United States v. DiRosa, 761 F.3d 144, 153 (1st Cir. 2014). It is only unfairly prejudicial evidence that is a no-no.  See id. And we see nothing unfair about the jury's weighing this evidence for the limited purpose of figuring out whether Rodríguez-Soler knew some of the conspirators — certainly we cannot say that the evidence's probative value is "substantially" outbalanced by the risk of "unfair prejudice."

Wait a minute, says Rodríguez-Soler:  The photos and testimony raised the specter of unfair prejudice because a jury could think that he was a "bad" guy since he ran with horse thieves (based on the police-station evidence) and disobeyed traffic laws (based on the traffic-stop evidence) — activities (horse thievery and traffic violations), he stresses, having nothing to do with the alleged drug conspiracy.  Call us unpersuaded.

Again, and at the risk of being overly repetitive, the police-station evidence speaks volumes about the strength of Rodríguez-Soler's ties to Tatón — showing as it does not only that he knew Tatón but also that he was loyal to him; hence his presence at the show-of-support gathering in front of the station when Tatón got collared on the separate horse-theft charge.  And try as we might, we can spy no convincing sign that the judge misused his considerable discretion in concluding that the evidence's probativeness is not substantially outmatched by the threat of

unfair prejudice.  See United States v. Adams, 375 F.3d 108, 111 (1st Cir. 2004) (explaining that we "normally overturn[]" a judge's calibration of the probative-value/prejudicial-force scales "only where [his] judgment is egregiously wrong").

Turning then to the traffic-stop evidence, we doubt that seeing someone pulled over for a traffic offense could have much of an impact on the jury.  That traffic stops are part of everyday life — even for law-abiding citizens — is hardly a news flash.  And importantly, the link between being a traffic violator and being a drug conspirator is super attenuated at best.  Given there is little indication of unfair prejudice substantially outweighing this evidence's probative value, Rodríguez-Soler cannot show that the judge erred — let alone plainly erred — here.

That leaves his beef with the officers' testimony that they took the police-station pics as part of their investigation into the drug conspiracy — testimony that he says essentially fingered him as a coconspirator too and so smacks of guilt by association.[5]  Though he gets points for creativity, his argument does not persuade.

As we see it, the testimony helped explain why and how the police had the photos in the first place — and also how an

_____

[5] Parts of Rodríguez-Soler's brief talk broadly about "photographs and the testimony," like he is attacking both the police-station evidence and the traffic-stop evidence.  But the testimony he points to only involves the police-station photos.

officer first saw Rodríguez-Soler.  No doubt, what they said may have prejudiced him in the sense that it fit hand-in-glove with the government's theory of the case.  But he has not convinced us that the testimony caused <u>substantial unfair</u> prejudice to him.  In certain circumstances officers can — consistent with Rule 403 — get into the nitty-gritty of their past drug deals with drug defendants to explain how they met, <u>see</u> <u>United States</u> v. <u>Doe</u>, 741 F.3d 217, 228-32 (1st Cir. 2013), which seems a lot more damning than simply pointing out that a defendant was with other persons being investigated for "criminality," as happened here.  And even if the judge's call was "debatable," admitting the evidence was not an "egregious" wrong.  <u>See</u> <u>Adams</u>, 375 F.3d at 113.  What is more, even if we found a Rule 403 violation, we would stamp the error harmless given the evidence connecting Rodríguez-Soler to the conspiracy.  <u>See</u> <u>United States</u> v. <u>Dunbar</u>, 553 F.3d 48, 49 (1st Cir. 2009) (explaining that "[t]he essential inquiry in harmless error review is whether the improperly admitted evidence likely affected the outcome of [the] trial" (internal quotation marks omitted)); <u>see also</u> <u>Adams</u>, 375 F.3d at 113 (similar).  Recall the cooperating witnesses' testimony about how he was Tatón's right-hand guy, how he was one of the bosses, how he carried guns because of turf wars, <u>etc.</u>  Sure these turncoats had reasons to fabricate their stories to curry favor with the government.  But his lawyer brought this

out on cross.[6]  And the jury was free to credit their testimony anyway.  See United States v. McElroy, 587 F.3d 73, 86-87 (1st Cir. 2009).  Consequently this facet of his Rule 403 argument does not require reversal either.

Two groups of issues down, one to go.

(D)
The Rule 404 Issue

Shifting to his other-acts argument, Rodríguez-Soler calls the police-station and traffic-stop evidence inadmissible "extrinsic" evidence of his "associating" with conspiracy members in a way "not intrinsic" to the crime charged.  "Extrinsic" and "intrinsic" evidence — these are concepts associated with Rule 404.  See, e.g., United States v. Green, 698 F.3d 48, 55 (1st Cir. 2012).  So even though he never cites Rule 404 in his briefs, he is essentially arguing that the judge should have banned the evidence on Rule 404 grounds.  To put his argument into perspective, we offer a quick primer on Rule 404.

As everyone in the field knows, Rule 404 bans evidence of a person's other crimes, wrongs, or acts to show a propensity to act in a particular way.  See Fed. R. Evid. 404(b)(1).  But the evidence may be admitted for "other purposes," like to show

---

[6] The judge also focused the jury's attention on the potential problems with cooperating-witness testimony.  "[Y]ou should consider the testimony of these individuals with particular caution," the judge told the jurors, because "[t]hey may have had reasons to make up stories or exaggerate what others did . . . to help themselves."

"motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," id. 404(b)(2) — a list that is illustrative, not exhaustive, see United States v. Landry, 631 F.3d 597, 602 (1st Cir. 2011). Basically, then, the rule is a rule of inclusion, since only one purpose is banned and a bunch are permitted, see United States v. Zeuli, 725 F.2d 813, 816 (1st Cir. 1984) — though naturally we cannot allow the exceptions to devour the rule, see United States v. Varoudakis, 233 F.3d 113, 125 n.11 (1st Cir. 2000).

By covering only evidence of a person's "other crimes, wrongs, or acts," the rule draws a line between prior acts that are part of the charged crime and those that are not. United States v. Bowie, 232 F.3d 923, 927 (D.C. Cir. 2000). Like other courts, see id., we call evidence of the charged crime "intrinsic" and evidence of "other" crimes "extrinsic," see United States v. Shea, 159 F.3d 37, 39 (1st Cir. 1998). Assuming, as the parties do, that the police-station and traffic-stop evidence is extrinsic to the charged conspiracy, we must consider whether the evidence is relevant (other than to prove propensity) to an issue in the case — and, if yes, whether the danger of unfair prejudice substantially outweighs the evidence's probative value. See, e.g., Landry, 631 F.3d at 602; see also Zeuli, 725 F.2d at 816 (noting that if the Rule 404(b) evidence is relevant to something other than

propensity, "it is admissible, subject only to the rarely invoked limitations of Rule 403").

Having set the stage, we can make quick work of Rodríguez-Soler's argument. As we said above, the contested evidence is relevant to show that he knew some of the conspirators, a non-propensity purpose. See generally United States v. Flores Perez, 849 F.2d 1, 4 (1st Cir. 1988) (explaining that when the other-acts evidence "is introduced to show knowledge, motive, or intent, the Rule 404(b) exceptions to the prohibition against character evidence have been construed broadly"). And as we also said above, the balance between probative worth and prejudicial impact tilts in favor of letting the evidence in. It follows, then, that Rodríguez-Soler's Rule 404 theory cannot pass the plain-error test. And that is that.

## FINAL WORDS

Our work over, we affirm Rodríguez-Soler's conviction.